We have three cases scheduled for oral argument on this morning's docket. We'll begin with cause number 12, I'm sorry, 15-20589, United States of America v. Jim Dial. Appellant? Yes, Your Honor. You may proceed. Bill Gallagher for Jim Dial. May it please the Court, there are two broad categories of errors in the District Court's restitution order that warrant vacator by this Court. The first and, frankly, smaller category is that we're just on the face of the documents in the record the Court ordered restitution for amounts that are not authorized by statute. The largest chunk is for an award for consequential damages, for someone who claimed $80,000 for impact on personal income, and then another $17,000 for losses related to a mortgage, as opposed to investment income and other compensable income under the statute. But there are others also where, as listed in my brief, the District Court included restitution for the full amount of a purchase of the investment stock without then deducting the amounts that people informed the Court they had made back when they had subsequently sold the stock. And it's very clear under the law that's the — it's that full amount, the purchase price is not the loss. The purchase price is the net. Dial didn't raise any of this, though, did he, for the District Court? Only generally, Your Honor, not the specific objections I listed out in the appellate brief. I mean, you know, there were six binders of victim impact statements here. And, you know, we've got a — we've got this case, Lopez, that says that where the fact-finding could be made by the District Court and it's not raised, that's just it. And, well, I had a couple of responses to that, Your Honor. One, as I note in my brief, other than the unpublished Bigelow decision, I'm not aware of any instance where this Court has applied that in the case of restitution for — to not review amounts rewarded in restitution unauthorized by statute. And even in Bigelow, as I said, it's unpublished, so it doesn't apply in this panel. And it's also an alternative holding without any real — the reasoning in that opinion describes why the defendant will lose on the merits. And then it just summarily cites the Lopez line of cases at the end saying, in any case, we can't review it. I think that's unpersuasive, particularly for, in light of this Court's precedent, holding that, like in chemical and metal industries, holding that awards of authorization — I'm sorry, restitution in excess of the statute are illegal sentences. So I think importing the Lopez line of cases to the restitution context is unauthorized. The other is, especially as far as I think the types of issues I'm talking about here, it's not when we're saying, oh, this person is lying. If the Court looked at this additional information, you'd find out that what they said is not true. This is just looking — taking completely on face value everything in the district court record, taking as completely true what the victim said, that, as I said, that he lost $80,000 for impact on personal income. That's a legal question of whether that's authorized by the statute. I mean, is it too much to ask that the defendant, the judge, had two hearings? Is it too much to ask that he point that out to the judge in six binders of victim impact statements? I have no justification for why that was not done here, Your Honor. I find that perplexing, and I wish I could offer a better explanation for that, and I can't. That said, and that — and admittedly, the Governor has argued that these errors are waived because of that. I disagree with that because I don't think there's any indication that this was done as a strategic decision or knowingly. I don't argue that it was forfeited because it was not addressed as specifically as it is in my appeal brief. But even under that standard, I think these errors are clear, Your Honor, and he meets the necessary showing for a plain-error reversal. But you're saying it should be de novo because you're relying on the cases that say that any award beyond the actual losses is a jurisdictional error? Yes, Your Honor. So that basically means — I mean, I understand the case law you're relying on, but that basically means any mathematical error or just any basic factual mistake you can point out on appeal for the first time and get de novo review. That's your position, even though these are easily correctable if they've been pointed out in the district court? Correct. And so it has to be — right. So the penalty is it has to be that kind of error where it is so clear on the record as opposed to, you know, we find some new record later finding that so-and-so's — someone's victim's losses were not what they said they were. Obviously, we can't do that. So it does. We are — we have to be able to show that, like you said — You're saying you can't bring in new evidence that says, oh, we investigated this victim and found out, you know, they still have this property. They say that they lost. Correct. But so the error does still have to be plain, so there is some penalty. But I think the Court's precedents on this, and particularly in restitution, have been consistent in finding that I have not found any case where an error was of this sort, this plain error based on the record composed in the district court where the court hasn't exercised its discretion to vacate the restitution. Well, why should the rule be different for restitution than any other failure to call something to the Court's attention? Well, Lopez and — except, again, for the Bigelow case, which I put off to the side, Lopez, to the best of my research, has only been applied in Guidelines cases. So there, this Court — I mean, granted, Lopez came out in the Mandatory Guidelines era, but particularly now, that is always going to be a matter of discretion for the Court, whether the judge is sentencing someone to six months more or less as long as they're within the statutory maximum, in which case I don't think Lopez would apply if someone — if someone were sentenced on a felon in possession case to more than ten years because of some factual error. I have trouble imagining this Court not vacating that. But Lopez itself was a Guidelines case. The other cases in which — Glayborne and other cases, Chung, in which Lopez has been applied to decline review have also been Guidelines cases. And I think — and as opposed to restitution, where it's a reading of a statute and limits the authorization of statute to very typical things. And I think — and the Court has held that kind of limitation, again, particularly in the chemical and metal industry case, to be in the legal sentence. And that's obviously never been said with a pure Guidelines error, Your Honor. So as I said, the first category, but admittedly smaller category of errors which are plain on the record, is that roughly $120,000, which is in the last section of my brief, where I itemized that out. The other, which is the larger amount, which I also itemized previously in my brief, is about $1.3 million. And there, those are the places where people, to various degrees, essentially just said, I lost X, sometimes with a little more detail, but sometimes with a little less. The problem there — and I recognize the force of the cases the government brought to the Court's attention this week, such as Westbrook, allowing — or finding the district court did not err, and allowing on fairly — relying on fairly bare evidence in imposing restitution award. That said, the victim impact statements here were of a sort that weren't calculated to yield reliable evidence. As we describe in the brief and as it's quoted out, the question that was posed to these victims was, tell us or identify your investment and or losses. But it doesn't tell them — actually, that question is structured in such a way as to solicit more than just investment losses. It's suggesting there's something else. And so when someone just writes in, I lost $4,500, that's not enough to — that's not enough reliable evidence to hold that someone lost losses compensable under the statute within the authorized timeframe of the offense. And that's the other one. Even though the preface to the victim statement request from the government informed the victims of the timeframe alleged in the indictment, it also failed to tell them that they could only submit losses that were in that timeframe, as required by Inman and his other cases precedent. And so in some cases, as I point out later, people, when they provided the detail, it's clear they provided — they provided the detail within that timeframe, and that's unauthorized. But so — You know, the probation officer did two PSRs in this case. And ordinarily, when a judge — that supports the determination by the judge when the — when the probation officer lays out facts in the report. Why should this be different? Because it's not — again, it's not — in those cases, it's, again, where people are saying that the facts aren't unreliable. I'm not suggesting that a particular statement by any particular defendant or any victim that they lost a certain amount of money is unreliable in and of itself. What it is, is they were not apprised of the legal framework that gives rise to it. They had nowhere to know it, and there was no way for anyone else to know it, that they were only seeking losses, the losses specifically authorized by the statute. And the statute is in some ways — the restitution statute is in some ways narrow. It — it doesn't include what would often be colloquial concerns as losses, called losses, like losing money from work, lost — lost opportunities for other investments, those kind of things. I mean, those would be — when we're talking about business, those would be losses, but they're not compensable under the statute. And nothing provided these victims told them to provide that information, and they certainly — and, well, let's be clear. The whole amount of restitution in this case was about $7.3 million. For $6 million of it, I have not challenged that the victims did not provide sufficient information that what they provided was reliable, and so the court could enter that restitution. So this is just for that other remaining part. But as to those, without providing the additional information, again, without telling the judge that they were only giving approximations, they didn't have a basis for reliable information. In the cases you're referring to, Judge Davis, where the Court has held that information of PSR can be sufficient, the premise on that, it's reliable information. And that's — the Court has always said that. It's like when there's reliable information in the PSR, the Court can rely on it. This wasn't reliable information because it wasn't calculated to provide. Well, ordinarily, the probation officer makes that, at least the first decision on whether it's reliable, doesn't he? I mean, that's part of what he does. Correct. But in this case, the extent they're exercising their legal judgment that — I mean, the victim restitution forms were provided, as best I can tell, were drawn up by the government, submitted by the government, and then turned over to probation. Probation did do a report, because this gets remanded. When was the last PSR? I'm trying to recall the — what the PSR said versus just what these victim impact statements were that were submitted. Well, the — there wasn't a new PSR for this Court's remand. There was an addendum. Based on the victim impact statement. Correct. Yes. Those were submitted to probation and the Court. Yes. So after — I think I'm answering — just to make clear, I'm answering what you're asking. After remand, there's no question the government then submitted these binders to the Court and essentially probation. Probation then went through them and did this addendum, a three-page addendum, I think, listing out the amount of restitution which was ultimately awarded, about that $7.3 million. And so that's in the record, both in the district court and now here. So the difference between the ones you're challenging and the ones you aren't, the ones you're not challenging had, like, documentation of the purchases and just a more concrete calculation. I mean, where's the dividing line between what you think were the appropriate ones and the inappropriate ones? That's exactly it. So there's something in there such as bank statements or investment records, to let first be clear that we're talking about investment losses, and then to be clear we're talking about the right timeframe. So — and those, like I said, were submitted in the vast majority of these. It is only in this last $1.3 million — or, as I said, $1.3 million for that and then another $120,000 or so in which they did submit additional information. And that information makes clear that the restitution award was unauthorized for various specific reasons, which I went through in detail in my brief. So in this case, for both of those, either because of unreliable information or because of information showing that the restitution award was clearly unauthorized, that the judge made a legal error in ordering that restitution. And as I said — and I do — I understand the Court's reluctance to do this when there was — and there's no criticism of the district court here not providing opportunity to raise these objections. That happened. Also, the objections — the specific objections were not raised. They also were not waived. The attorney repeatedly made clear that they did object to the restitution and intended to be — to submit something in more detail, and that just didn't happen. So we have — our burden then because of that is to show that these errors are clear. But in light of that, once we get to that, the Court's precedent in its restitution cases has been that when a court has awarded an unauthorized amount, it's found plain error and it's vacated. And accordingly, I ask the Court to do the same thing here. If there are no other questions, I'll reserve the rebuttal. Thank you, counsel. Thank you, Your Honor. Good morning, Your Honors. I'm Catherine Hayden for the United States. The procedural background on this case, to answer — to go back to what occurred here, it goes back to — this is one of those where restitution was imposed post-sentence. So that's part, I think, of what created the problem in Appeal No. 1. There was 317 binars that were submitted to probation as well as to the district court. During that time, the victim witness coordinator, the prosecutor, the probation officer, all of them obtained additional documentation with regards to a lot of the objections with respect to specific victim impact statements. They discussed it. They went over it. And so this occurred before the first appeal. On the first appeal, it was sent back on remand for a hearing and to re-assess the restitution order based on the arguments, which the parties did grapple with. How do we respond to the remand order? We want to make sure that we stay within the spirit of the remand order. What can we do? Because we do have these documents over here that we've addressed some of these questions with regards to certain victim impact statements. Is this new evidence that we can present on remand when we're arguing and addressing these objections? Or do we have to put it in a separate pile? So on remand, at the initial hearing, everybody was talking about the prosecutor, the defense, the court. We're trying to figure out the perimeters of how do we operate now on remand. We want to do this correctly. We want to make sure this doesn't happen again. So at that point, the defense counsel objected to the submission of 317 victim impact statements. And the prosecutor said they developed the evidence and showed that this was, in fact, delivered to the court, and the court confirmed that he, in fact, did consider this evidence. So during this time, the prosecutor says, we also have this over here, these other documents, this supplementation that we've been addressing. The probation office said, we have looked at this thoroughly. We've reviewed these objections. We have come back. We have talked to the victims. So there was a lot going on beyond just the 317 victim impact statements. So during that time, the prosecutor suggested, and everyone agreed, that this is what they requested in their first appeal, was that probation would do an addendum to the PSR to be a part of the record as well. So they agree that once the addendum is going to be submitted, that both sides will submit specific objections to anything that they had with respect to the specific victim impact statements. The court gave them, you know, two months after the addendum was completed to provide any objections. In the context of the additional documentation, the prosecutor said, when we were addressing the objections, our understanding is we can develop and discuss this additional information in the context of any specific objections. I'm open to discussing, you know, whatever specific objections you have. So time goes on. There's no specific objections. The court grants a continuance for even more time to submit specific objections. They get to the final hearing, and at that hearing, just go back one other. At the initial hearing, the defense's position was not so much that they're making objections with regards to the legal competency of the evidence. They were objecting to admitting it to begin with. They didn't think it was a proper foundation. They didn't think that the court could say that it actually had considered those 317 binders. The court, on the other hand, said, yes, I do remember very, very distinctly looking at these letters and the victim impact binders. In the context of that objection, defense counsel stated, well, Your Honor, if you had, you would have noticed certain discrepancies. But they don't go into any specifics. They say we have a spreadsheet. They never offered the spreadsheet with regards to any kind of specific objections or problems that they had. And so at that point, the belief was that those things would be worked out. So we now go to the second final hearing, no objections. The court says that your initial objection at the first hearing is preserved. But if you go back to the first hearing, I just stated what the objection was. So you go to hearing number two. The court ends up adopting the addendum in the PSR. The addendum to the PSR states that we have reviewed these 317. And we also know from their representations at the first hearing that they thoroughly reviewed the additional documentation. They talked to the victims. They addressed the defense objections. And you can see even in the addendum that they addressed the specific objections in the first appeal. Because in the first appeal, again, they're able to make certain specific questions about certain victim impact statements. The probation officer addressed every single one of them and showed why they were wrong. And so in doing so, if you'll notice, those same objections are not raised in the second appeal. So move forward. The court adopts the addendum and says, by the way, because all the way through, the defense counsel is saying that I'm going to help the court by filing these findings of fact and conclusions of law. And the court says, please, because I could use your guidance. It would help. And so at the final hearing, the court still leaves open. It states, I am adopting the addendum, but I'm open to modifying my cross-the-board acceptance of this addendum subject to what your findings of fact, proposed findings of fact and conclusions of law are. Now, in preparing for argument, I did find something that I did not know when I wrote the or I did not see when I wrote the brief. It was under seal, but 16 days after the court filed the restitution order, there were proposed findings of fact and conclusions of law filed. This was after the restitution order had been issued on September 20th. October 6th is when they filed their proposed findings, and then they filed the notes of appeal two days later. So it was after the fact, and so for purposes of anyone acting on them, they were late. They were untimely, and they were after the restitution order had been filed. But significantly, the court waited a month between the hearing and filing the restitution order. So it was waiting. It was giving defense counsel time to file the proposed findings, and they never were filed. And the point that I'm stating is that the whole purpose for the remand was to give everyone the chance to have a hearing, because that's what they asked for in their first appeal. We want a hearing. We want to be able to make our specific objections. We want to be able to present our own evidence. So that opportunity was provided. And this whole long history you're reciting and the fact that you're up here in the circuit a second time on a restitution order, it seems to me it stems from the fact that restitution really wasn't put together originally in a timely manner like you'd expect. And in a securities fraud case, I would think you'd have an expert report, even for lawsuit sentencing purposes, not just for restitution, because loss is everything in these cases, going through the stock purchases and transactions and coming up with a figure. I mean, isn't it problematic to rely on victim impact statements for a securities fraud loss calculation when that's something lawyers usually can't even do? That's why they often hire experts to analyze the stock transactions. How can we expect laypeople to figure out the loss attributable to some misconduct in a stock securities fraud? I think in this case it might not be as difficult as some cases because this was a complete bogus company. It went to nothing. I mean, it really was valueless. At the end of the day, they went out of business, but they were promoting their business by stating that we are selling these jet motors all over internationally and we're making millions of dollars, and they literally had pretty much no income. And so at the end of the day, the whole thing was really just a bogus. You know, in those situations where you do have some legitimate business going on and it's kind of hard to determine what is legitimate and what isn't. But in this case, and that's why when they talk about— But I guess then even more the—oh, go ahead. I'm sorry. I think they based it on what they paid for the stock because they paid for something that was valueless. I mean, even if it traded at one point based on false press releases, based on false information, based on artificial inflating— I understand, but so why didn't we have this post-sentencing restitution? Why didn't the government just—this much stock was purchased. It all went poof. That's—I mean, why did we rely on all these victim impact statements and years of litigation? I think, Your Honor, because they were trying to make sure they had all the victims. At the time of sentencing, they did have 284 victims. At the end of the day, it was 317. So there were—they were wanting to make sure that they represented everyone, and they were still trying to round it up, I think, at the time of sentencing. And, you know, there are several cases that state that the victim impact statements, even ones that are unsigned and unverified, if they—in these particular victim impact statements, they didn't—they did state the scheme. They did—and there's only one scheme. I mean, Grifco, there is no something else out there. Grifco was a sham from the beginning. It operated. It went under. The whole thing was based on a fraud. They merged with a company that had nothing to do with oil industry equipment. It was a wireless communication company that was defunct, and they changed the name to Grifco. But on the victim impact statements, at the top, it stated what the scheme was, what it involved, what the dates of the scheme were, and it told—it asked, if you receive losses from purchases, you know, from this fraud, from the purchase of this stock, state what your losses are. And the victims did state their losses. Now, there are some that did submit, you know, lots of documentation and going through it, and that's what the probation officer did. That's what the victim witness coordinator did. That's what the parties did when they were trying to go through each one. And it goes back to why it should be something that is a fact. It's not—I mean, these were types of facts that could have been easily resolved by the district court below. And to show that, the addendum reflects that, because it specifically addressed each objection they raised in the first appeal and showed why it was wrong. And I think there was a lot of discussions, and they just didn't have the opportunity to show this. And even on the ones that are in the appeal now, and it is amazing that they spent so much time going through it on appeal, and they weren't willing. They would not participate, basically. They just threw their hands up and said, why should we? There's really no need to object. Instead of participating— Well, part of the reason is they're not going to pay it anyway, huh? That could be. The dial is not someone who is expected to be able to pay the restitution order based on his income. But it is the type of factual dispute that Lopez does address, and the cases that talked about it, too, in addition to Bigelow. We also have United States v. Guy. We have Chung that was cited in Bigelow. All of those have to do with law. I mean, whether you're determining losses in a restitution aspect or whether you're determining losses under the guidelines, they are for different purposes, no question. But they are factual determinations. And the whole purpose for letting the district court to resolve the factual—to resolve it is to develop it and to allow it. What happens if you don't is the appellate court is asked to do a de novo interpretation of the evidence, and that's exactly what has happened here. And that's why Lopez, Claiborne, and many cases after that have refused to do that. It replaces the fact-finding function of the district court and places it on the appellate court, which really was never meant to be. And in this case, they had the opportunity. Also, the appellate court is ill-suited to review undeveloped facts for the first time on appeal. It blindsides the district court. In this case, the district court was blindsided, and the district court was sandbagged. And in Sisto, 534, Fed 2nd, 616, it says, if counsel deliberately avoids objecting, plain error will almost never be found. The purpose of a contemporary objection under Puckett is to avoid sandbagging. It also avoids delay and expense of a full appeal, which we've already—now this is appeal number two. And the government, going back to what, you know, what the context of what occurred, the government's position is, is that we should be able to rely on Lopez, we should be able to rely on Claiborne, and that the victim impact statements did provide a sufficient foundation, at least initially, and that it behooved them to make specific objections and provide some sort of argument or rebuttal. That's exactly what they asked for in appeal number one. That's what they received, and they just did not participate. They did not meaningfully move forward when they could have moved forward. So what do we do? We're back again today, and they're saying we want another remand to recalculate the restitution again. So we send it back to the district court. What do we tell the district court this time? The district court really did try to get—to do everything right the first time. And, you know, and if it is sent back, do we limit the court from considering all the evidence with regards to what the losses are? Should the court be able to consider the things that they received from the victims that explain certain things that they claim on appeal that we weren't able to defend or to even discuss because we didn't know what they were until they filed their brief? For example, I mean, some of these—if you go through the victim impact statements, when they say lost income, no, what you can tell from the victim impact statement is that they were referring to the purchase price of the stock. They put it in the blank of lost income, but it's very clear you can see that they're referring to it. This is what I pay for my penny stock. There was also one where they claimed that the government was including promotions, bonuses, and foreclosure. Well, if you look at it closely, that amount was not included. It was deducted from the total amount. But these are things that are facts that could have been resolved, could have been discussed, could have been clarified. And so now what we're doing is we're trying to kind of make sense out of it for the first time on appeal when, just like in the second addendum the first time around, the probation officer was able to explain and show why each one was wrong. And if for some reason one was incorrect or one did have an issue, we could have resolved it, and we would have resolved it. So now we're back, and we're doing the same thing again. So the government does rely on Lopez and Claiborne because these are factual issues. And I understand when we're talking about the chemical medical, the restitution case as well as SHRMA. I mean, those are distinguishable. In the first case, they presented no evidence, and the government admitted. The government conceded. We did not present one iota of evidence, period. So, I mean, that was clear on his face. That's an unlawful restitution order. There was nothing to support it. Here there was evidence to support. They're just claiming that they're just disputing the facts underlying the restitution amount. And there's been several cases that have said that calculating the restitution amount cited in the government's brief is a factual issue. Bigelow, Guy, the challenge to restitution amount is factual and is capable of resolution. Westbrook's even recently, in that case, I think it approached it as it's a factual question when you're talking about the restitution amounts and you're disputing the amounts in the restitution order. And so even getting past Lopez and Claiborne where they talk about when it's something that can be resolved, it's within the power of the district court to resolve, it can never be plain error. And an example of that is ineffective assistance of counsel. Almost in every case, this court, unless you can clearly see from the record, they're going to send it back to the district court to determine the ineffective assistance of counsel claim. They're not going to try to resolve facts for the first time on appeal. That's the purpose of having the fact finder do it. But also in looking at the different prongs of plain error, even if we go past Lopez and Claiborne, and we look at the fourth prong of the discretion. The court has a discretion to not find plain error. And it's declining to remand, to recalculate once again. In this case, the government's position is would not seriously undermine fairness and integrity since it already received the remand for that purpose. So in this case, the fourth prong should be applied on a case-specific, fact-intensive basis. And it should be applied in rare cases, and this is just not one of them. Going back to SISTA, should not exercise discretion when the defendant delivery avoids making proper objections. And in this case, defense counsel at the second and final hearing said, I see no need to make an objection. I have a record cite to that, and I can cite it for the court. Yeah, didn't make sense to make an objection. That was on page 432 of the record. Didn't make sense to make an objection. Didn't make sense that she ends up filing the findings of fact at a point where you can't use them. It's not helpful. It's not meaningful. So the government's position is that the fourth prong should not be exercised either for that reason. And unless the Court has any other questions, the government would rest on its brief. Thank you, counsel. Rebuttal. Thank you. I'll just make one or two brief points, Your Honor. Just one, as far as the question raised by the government, we haven't asked that if the court vacates the sentence, that this be a closed record upon remand. Acknowledge it for the reasons, I think, that are apparent that without the specific objections the first time through, there was an opportunity. How much does the defendant admit that the restitution order should be, at least, what amount? As I said, about 6 million, Your Honor. I think I raised — I think in my brief, my total objections are about 1.4 — about 1.4 million, Your Honor. So it gets to about 1.4 — there would be about 6 million that we have. No, he hasn't tendered that amount. Sorry, Your Honor? He hasn't tendered that amount, has he? No, Your Honor. I can tell you, actually, the government served a restitution order recently and noted how much had been collected. And I think the amount totaled so far has been about 500,000, most of which had come from the sale of one of the co-defendants' homes. So, yes, as you suggest, realistically, the prospect is not great of receiving 7.4 million from the three defendants, as best I can tell. But, yes, I don't think there's any issue of a closed record on appeal. That's not requested and wouldn't be appropriate. And second, we're not asking the Court to go through and figure out what the restitution — this Court to go through and figure out what the restitution amount is. We're asking this Court to — For any of the victims? I'm sorry? For any of the victims, you're not asking this to do? We're just asking — correct. We're just asking this Court to hold that the record here, to hold that the award authorized by the Court exceeds that allowed by statute. It's not a — that's a conclusion of law, which this Court can do and which this Court is used to doing in many settings, and then remand to the district court for them to — for it to exercise its fact-finding role. That's entirely within this Court's purview and something it's well capable of doing. And then finally, in the district court, the government will have the opportunity to present whatever we will take care of. I mean, frankly, now it's been gone through rather thoroughly, I think, in the briefs. If there's some mistake in my briefs as to what the actual errors are with the losses, then that will be easily resolved by the fact-finder, as it should be. Oh, the one other point I want to make is I do think that the government's position on the first appeal as a basis for less of a finding or being less willing to find plain error now is not warranted. What happened there was much different than what happened this time. There, the evidence wasn't in the record. Evidence was submitted post-sentencing. Apparently, the statute had — even though defense knew that restitution was contemplated, what happened there was the statute talks about this PSR addendum, which we addressed. And so all of a sudden when the government submits this order, which then gets entered the next day, the defense was shocked and the judge refused to reconsider it. That was a much different process than what's this time. This time, we're frankly in the first situation, and I'm not disputing that the defense did have an opportunity, but that's always the case, almost always the case in any plain error appeal. Lawyers and clients have an opportunity to object to what's going on in the district court. That is not a reason to find waiver. It's a reason to find plain error, but we meet it. We meet the showing for plain error in this case, Your Honor. So you do — what about her fourth-prong argument that it's not an injustice because you had a full opportunity to raise these issues? In this context, I think that's inconsistent with the Court's precedence, Your Honor. I have not found restitution. The Court has, as best I can tell, Lozano, Inman, all those cases, has found that unauthorized restitution awards are even less than this, $60,000 and $70,000. I think in Lozano from last year, it was $80,000. In here, it's more than that. Restitution awards, leaving those in place above the statutory maximum would call into disrepute the Court's integrity and warrant an exercise of the Court's discretion. Why aren't you arguing for de novo standard of review? If the way you get around Lopez is by saying, well, restitution, this is a jurisdictional problem, you can't exceed the true amount of loss or it's beyond the authority of the Court, so why don't — why do you still say it's plain error? I'm not sure how you get to that. Well, I think the Court has said in — well, even in, for instance, Westbrooks, when you're talking about a different restitution, I think what the Court said there was, well, this wasn't — we don't need to figure out whether this was raised above or below because it would have the same effect and we always move on and find the third and fourth prongs satisfied in here. So while I'm saying it's plain error because it wasn't objected to specifically, frankly, I think to some extent it's just using different words to get at the same thing, because since we're talking about restitution and awards in excess of the statutory maximum, I think ultimately the effect on this Court's analysis is not very substantial,  All right. Thank you, counsel. Thank you, Your Honor. All right. The Court will take this matter.